MR. JUSTICE SHEEHY,
concurring in part and dissenting in part:
I concur with the majority where it holds that there was a sufficient number of signatures for each of the officers involved in the recall effort. I dissent with all possible vigor to the remainder of the majority opinion.
The decision in this case is a giant step backwards for the people of Montana. Its immediate effect is to blunt, nay, negate the efforts of a substantial number of residents in Red Lodge to have a say about their elected officers through recall. But its longlasting effect is to give opponents of recall tools to defeat the recall process. As a court, we should not be thwarting recall efforts. All governments, Jefferson said in a famous document, derive their just pow *436 ers from the consent of the governed. This Court has needlessly prevented those citizens of Red Lodge from expressing their dissent — their lack of consent to be so governed. There is little to be proud of in that result.
Elected officials regard recall as a tramp in the parlor. For that reason efforts to have a recall act enacted in the legislature fell short in several sessions. Frustrated in the legislative process, the believers in recall fostered the “Montana Recall Act” by the initiative process in 1976 as a way to bypass a negative legislature. Put to the people for their vote, the Montana Recall Act passed 155,899 for to 115,702 against. At last, the believers exulted, power to the people had been achieved.
The legislature got its hands on the Recall Act in its 1977 session. By way of “cleaning up the act” they inserted several new provisions. One was the “warning” provision relied on here by the majority. Another was the requirement that “each separate sheet of the petition” should contain the warning and reasons for recall. Only incidentally the legislature increased the number of signers to petition for the recall of legislators from 10 percent to 15 percent of the eligible voters.
The legislators, however, did not remove section 2-16-618, MCA, (it was probably overlooked by them) as follows:
“2-16-618. Forms not mandatory. The forms prescribed in this part are not mandatory, and if substantially followed, the petition shall be sufficient, notwithstanding clerical and merely technical errors.”
Section 2-16-618 was in the original initiative. It is a mandate to us, in construing the act, to uphold petitions if they substantially follow the act. The majority here, enjoined not to be technical, have skated around this section on a cold technicality of reasoning, finding “reasonable sense” in a warning on each sheet. Forgotten by the majority, but showing the technicality of the technique of insisting on a warning on each page, is another provision in the Recall Act that the petition may be a continuous sheet, folded to the *437 dimensions of 8-V2 x 14 inches. Thus a continuous sheet, folded like a computer printout, would pass muster under the act, even though the warning appeared only at the beginning, so long as the folds did not exceed 25 pages. Section 2-16-617(1), (2), MCA.
I see extreme technicality in requiring the warning to be on each successive sheet of a stapled petition, when a continuous sheet, folded as a printout form of several pages is valid under the act. I do not agree that this Court should join with the legislature in thwarting the obvious purpose of recall and thus prevent electors from getting to the meat of the issue, whether the electors consent to X remaining in office.
The other reason relied on by the majority to defeat the recall in this case is that the county clerk did not properly verify the signers of the petition. Again the reasoning of the majority is most technical. All that the statute requires is that the county clerk be “satisfied [that] the signatures are genuine” and on that satisfaction certify his determination so that the election may be held. Section 2-16-620, MCA. Thus the majority makes it possible for a recall effort to be blocked merely by the inaction of a county officer over whom the signers of the recall petition have no control. Under the holding of the majority, a recalcitrant, obstreperous or just plain negligent county clerk can frustrate the recall process.
As I said, the majority has given elected officials two powerful tools to obstruct the recall process, technical interpretation, and official inaction. After all these years of effort, supporters of the recall process are back nearly where they started.